# The Chicago, Rock Island & Pacific Railway Company

## v.

## Joseph Becker.

*Master and Servant—Negligence of Master—Personal Injuries—Fellow-servant—Accident.*

1. In an action against a railroad company to recover for an injury received by plaintiff through the fall of a door, where the negligence complained of was in erecting and maintaining the door in question, it is *held:* That there was no evidence to establish the charge of negligence, but that plaintiff's injury was caused either by accident or by the negligence of a fellow-servant.

2. Railroad companies are only bound to furnish their employes such properly and reasonably safe tools, implements and machinery as experience has shown to be reasonably safe in the hands of reasonably careful and prudent men, except as to tools, etc., used in the operation of trains, where a different rule applies.

[Opinion filed December 8, 1890.]

Appeal from the Circuit Court of Will County; the Hon. Dorrance Dibell, Judge, presiding.

Messrs. Thomas S. Wright, Robert Mather and Snapp & Snapp, for appellant.

Mr. Joseph Becker, for appellee.

C. B. Smith, P. J.    This was an action on the case brought by appellee against appellant to recover for injuries received while in the employ of appellant, resulting from a door falling on him. A trial below resulted in a verdict and judgment for appellee for $1,500. Appellant brings the record here on appeal and assigns numerous errors in the record. In the view we take of the case it will be necessary to notice only a single error, viz.: that the verdict and judgment are against the evidence.

The facts connected with the case are few and simple, with

little if any dispute as to any of them. The defendant company had a supply or store-house in the city of Joliet where it kept supplies for the use of its road. In front and along the side of this supply house ran a platform, and by the side of this platform ran a switch or track, so that cars could be run there and loaded or unloaded. The level of this platform was a few inches below the level of the floor of the freight cars, brought there to be unloaded. In the side of this store building, or freight-house, was an ordinary door about eight feet long and seven feet high, hung on rollers overhead in the usual manner, so that when the door was opened it was pushed back along the inside of the wall of the building and rolled back on iron grooved pulleys, or wheels, on an oval iron track provided and appropriate for that purpose. This door had a handle attached to the side of it, near the forward edge of the door projecting sufficiently far from the face of the door to allow a man's hand to take hold of the handle and push the door, on its rolling pulleys, so as to either open or close it. This handle, by reason of its being necessarily placed on the outside and face of the door, would not allow the door to be pushed back quite flush or even with the jam of the door when it was opened. The door so hung and moved was a heavy door made of two-inch boards, and was intended to be kept in its position by its weight, thus holding the grooved pulleys on their oval rail fitting into the pulleys. On the day when appellee received his injury a car loaded with kegs of railroad spikes had been placed in position along the platform of the store-house and directly in front of the door we have just described to be unloaded into the building. A door, or boards fastened together for that purpose, was placed, one end in the car door and the other on the platform of the building, so as to make an incline platform, upon which to roll the kegs from the car into the building.

On the morning in question appellee, in company with three of his fellow-workmen, went to unload this car, and after sliding the door open two of them got inside the car to roll the kegs out, and appellee and another went inside the building to catch the kegs as they were rolled inside the building.

When the door was open there was a space of seven or eight feet through which to roll these kegs, without any kind of hindrance or obstruction.   While the kegs were being so unloaded one of the kegs was thrown out of the car in such manner and with such force that it rolled against the edge of the door with such violence as to throw it off its supports and, in falling, the door fell on appellee and injured him, and for which injury he recovered this judgment.

The negligence complained of was that the door was so constructed as to be dangerous, and that it was allowed to become out of repair, and that the agents and servant of appellant, whose duty it was to look after this door and keep it in repair, neglected to do so.   It was in proof that this door had on one or two other former occasions been thrown off its track, and fell either from one or both its supports.   But there is no proof in this record that this is not a good door—properly made and hung ; nor is there any proof of its lack of sufficiency, or adequacy for the purpose for which it is used when properly handled.   There is not a word of proof that it was not properly made or hung, or that it is not a usual and customary kind of door to be used in such buildings.   On the morning when plaintiff was hurt there is no claim that the door did not move properly on its rollers and go to its place, out of the way of the kegs, if they had been kept where they ought to have gone in the wide opening left for them to go.   It was not the fault of the door, that appellee was hurt, but the fault and carelessness of his fellow-servants in the reckless manner of rolling the kegs out of the car, so that instead of going into the building through an eight-foot opening, they ran against its side and knocked the door down.

It seems to us the evidence discloses absolutely no fault or want of care on the defendant in this case, but on the contrary it had provided the most ample convenience for its servants to unload this load of spikes.   It provided an open, wide space in the side of the building.   It provided a door that could be moved easily and safely in its moorings, entirely out of the way even of the largest and most bulky

freight, and which would be perfectly safe under all circumstances, when the employes in the use of the building were using any kind of care for themselves or the property they were handling. But the defendant did not provide a door that could not be knocked down with any kind of force or reckless handling of freight by the employes, nor was it bound to furnish any such door. Railroad companies are only bound to furnish their employes such properly and reasonably safe implements, tools and machinery as experience has shown to be reasonably safe in the hands of reasonably careful and prudent men; at least so far as such machinery relates to 'the ordinary things used by men in its employ, not connected with the running and operation of trains and the machinery connected therewith, where a different rule requires the best known machinery and appliances to be furnished to those employed in the more dangerous departments of railway service. Railroad Company v. Lonergan, 118 Ill. 50. Appellee's injury was the result of a pure accident without the fault of any one, or it was the result of the reckless and careless rolling the keg in such manner as to knock the door down by one of his fellow-servants. If it was a pure accident without fault from any one, then of course there can be no recovery against this defendant. If the fault and cause of the injury was the negligent act of his fellow-servant, then there can be no recovery against the defendant without proof that the defendant had failed to employ competent men in its employment. This rule of law has become so thoroughly a part of our jurisprudence and so universally recognized, that citations in support of it would be mere pedantry.

In any view we have been able to take of this evidence it entirely fails to show any negligence on the part of the defendant, which contributed to appellee's injury. The court should have allowed appellee's motion to direct the jury to find for the defendant and the failure to do so was error.

The judgment will therefore be reversed, but not remanded, since the record before us discloses the fact that appellee has no cause of action.    *Judgment reversed.*